OPINION OF THE COURT
Jane S. Solomon, J.
Plaintiff Allstar Capital, Inc. moves for an order pursuant to CPLR 5226 compelling defendant Eddy A. Curry, Jr. to make installment payments in the amount of $75,000 per month in satisfaction of a judgment debt. The motion is granted as follows.
Facts
On February 22, 2008, while in Nevada, Curry obtained a loan from Allstar in the amount of $570,000 at the interest rate of 84.36% per annum, with a maturity date of July 3, 2008. In the event of a default, the interest rate would increase to 89.36% per annum. Curry defaulted. On November 25, 2008, Allstar filed an action in the District Court of Clark County, Nevada. A judgment was entered against Curry in the amount of $1,224,522.90 plus interest at 89.36% per annum. On August 17, 2009, Allstar domesticated the Nevada judgment in New York.
Curry is a member of the New York Knickerbockers, a professional basketball team. His salary for the 2009-2010 basketball season is $10,500,423, and he has a “player option” for an additional $11,000,000 for the 2010-2011 season. He receives half of his salary in the form of “bi-monthly” paychecks of $358,746.45 over six months,[1] and receives the other half of his salary on July 1, 2010 in a lump sum payment, which he testified totaled approximately $3 million, net (Feb. 16 transcript at 92). Per paycheck, his take home pay, net of taxes and garnishment of $103,503.53 is $137,224.26 (Curry mem of law in opposition at 4).
Discussion
Curry argues that Allstar’s motion for installment payments should be denied because it violates 15 USC § 1673, the *515 Consumer Credit Protection Act (CCPA). The CCPA prohibits the garnishment of wages in excess of 25% of a debtor’s disposable earnings. Curry contends that his wages are already being garnished by more than 25%, and Allstar’s motion is an improper attempt to bypass the CCPA’s restrictions. Allstar counters that wage garnishment, also known as income execution (CPLR 5231), and installment payments (CPLR 5226) are separate remedies.
Allstar’s position is correct: Installment payments and income execution are two different means of enforcement under CPLR article 52. Unlike CPLR 5231, CPLR 5226 does not contain a limit on the amount of an installment payment order (see Craig v Klein, 2004 WL 5487913 [Sup Ct, NY County 2004], affd 8 AD3d 55 [1st Dept 2004]). The purpose of CPLR 5226 is to “compel payment of judgments by debtors who are in a position to do so” (Bergman v Buechler, 249 App Div 553, 555 [1st Dept 1937]). In differentiating the CCPA and income execution from all other forms of postjudgment enforcement, the United States Court of Appeals for the Second Circuit held that “[CPLR] Article 52 provides a variety of means for the enforcement of money judgments. The Consumer Credit Protection Act merely prohibits . . . the garnishment of [defendant’s] wages” (Long Is. Trust Co. v United States Postal Serv., 647 F2d 336, 342 [1981]). Historically, New York courts have granted installment payment orders where the debtor’s wages were subject to garnishment under CPLR 5231 (see Matter of Widder Bros. v Kaffee, 19 AD2d 817 [1st Dept 1963]). Accordingly, that Curry’s wages are garnished does not prevent Allstar from seeking installment payments.
CPLR 5226 provides in relevant part:
“In fixing the amount of the payments, the court shall take into consideration the reasonable requirements of the judgment debtor and his dependents, any payments required to be made by him or deducted from the money he would otherwise receive in satisfaction of other judgments and wage assignments, the amount due on the judgment, and the amount being or to be received, or, if the judgment debtor is attempting to impede the judgment creditor by rendering services without adequate compensation, the reasonable value of the services rendered.”
“The test is what the judgment debtor can reasonably afford to pay, taking into consideration his needs, those of his depen *516 dents, and other inroads on his income from other obligations” (Kaufman v Kaufman, 29 AD2d 922 [1st Dept 1968]). Though Curry’s wage garnishments do not prevent this action for installment payments, they do affect the calculation of his available funds from which installment payments may be deducted.
Curry contends that he cannot afford to pay $75,000 per month to Allstar because of his financial obligations. As adduced at the hearings on February 11 and February 16, 2010, Curry’s monthly obligations include the following:
1. Wage garnishment: $207,007.06 ($103,503.53 per paycheck).
2. Household and personal expenses for Curry, his wife and their children: $30,000.
3. Rent: $17,000 per month.
4. Payment to Curry’s mother: $4,000.
5. Payment to Curry’s father: $3,500.
6. Payment to Curry’s sister: $2,000.
7. Payment to Curry’s father-in-law: $4,000.
8. Rent for Curry’s father-in-law: $3,400.
9. Cable bill: $650.
10. Satellite Television bill: $425.
11. 2004 Range Rover: $1,313.52.
12. 2005 Range Rover: $1,691.10.
13. Insurance: $2,500.
14. Mortgage on Burr Ridge, Illinois home, which is in foreclosure: $40,000.
15. Private chef: $6,000.
16. Montessori school: $6,290.
Curry testified that his father, mother and sister are listed as dependents on his tax returns (Feb. 16 transcript at 12-14).[2] However, despite Curry’s description of his other relatives as “dependents,” he offered no evidence that these other adult relations, who receive expensive cars, generous “stipends” and various other gifts and payments, are indeed his dependents.[3]
*517 As indicated, Curry’s monthly income, after garnishment, is approximately $274,448.52.[4] Items 2 through 15 total $122,469.62, inclusive of the family’s $30,000 monthly expenses.
Several of Curry’s alleged expenses are not related to the “reasonable requirements of the judgment debtor and his dependents” (CPLR 5226) and should not be considered as relevant financial obligations. However, assuming, arguendo, that each expense is reasonable and necessary, Curry would still retain $151,978.90 in excess funds, after allocating about $1,000 a day for food, clothes, travel and other personal expenses. After deducting the $75,000 sought by Allstar, somewhat more than an additional $75,000 would remain available for Curry and his family. Viewed that way, the amount Allstar seeks cannot fairly be said to exceed that which Curry is able to pay.
Curry also claims that he has the following creditors (mem in opposition at 8-9):
1. Christina White: $197,495.88.
2. Belonga, Shapiro & Hynes LLP: $180,000.
3. Here’s The Deal: $33,000.
4. Juwan Howard: $350,000.
5. Korey Kellog: $15,000.
6. Lamar Gayles: $50,000.
7. Lee’s Foreign Car Service: $70,000-$75,000.
8. Pryor Cashman: $8,074
9. Progressive Insurance: $4,272.50 and $2,368
10. Mortgage arrears on Burr Ridge Home: $680,000.
11. Negative equity on the Burr Ridge Home: $1,000,000.
Curry argues that the motion should be denied because these obligations may lead to further judgments against him. This argument does not affect Allstar’s entitlement to payment. Similarly, Curry’s last assertion that his income is contingent upon his ability to continue to play basketball, and may decline when his contract expires, is irrelevant to the issues here.
Accordingly, it hereby is ordered and adjudged that plaintiffs motion for an installment payment order under CPLR 5226 is granted; and it further is ordered and adjudged that Eddy A. *518 Curry, Jr., the judgment debtor herein, upon service of a copy of this order with notice of entry, be, and he hereby is, directed to apply out of all monies received or to be received by him, from any source, commencing on the first day of June 2010, the sum of $75,000 per month on account of the judgment held by the judgment creditor herein, augmented by interest accrued thereon, until such time as the judgment and interest thereon shall have been paid in full; and it further is ordered and adjudged that the monthly installments of $75,000 shall be delivered and paid over by mail or electronic transfer posted no later than the first day of each month by the judgment debtor herein to Allstar Capital, Inc., the judgment creditor herein, at such address designated by the judgment creditor as it may include with the copy hereof served with notice of entry.

. It is unclear whether Curry receives 12 “bi-monthly” payments or 13 “biweekly” payments. Twelve payments made twice a month would total $4,304,957.40; 13 payments made every other week would total $4,663,703.85.

. Curry’s tax return is not included in the record.

. Twelve vehicles have been identified that Curry has purchased for himself, various friends and family members (which include a Rolls Royce and two Escalades) (Feb. 16 transcript at 29-30, 73-74, 101-102). Two of them have been seized in partial satisfaction of Allstar’s judgment.

. This does not include his net lump sum payment, which is said to exceed $3 million (Feb. 16 transcript at 92). Payment of $75,000 over the six months of the year in which Curry does not receive a paycheck would total $450,000, leaving him $2.55 million.